ROSWELL M. FIELD, and MARY A. FIELD, his wife,

*vs.*

SUSANNAH TORREY.

The *marriage* of a *feme sole*, guardian, *extinguishes* her power as guardian.

When she, after such extinguishment, continues to have charge of the proper-
ty of the ward, and to receive rents and profits, the ward, after full age, may
sustain the action of account against her, as bailiff.

In such case, a plea to the jurisdiction of the court, insisting that the whole
matter is within the jurisdiction of the court of probate, cannot be sustained.

The action of account, after the termination of a guardianship, may be sustain-
ed in the courts of common law, unless the guardian has accounted in the
probate court.

, This was an action of account, and the declaration and pleading
were as follws :

Susannah Torrey is attached to answer to Roswell M. Field, and
Mary Almira, his wife, in a plea that said Susannah render to said
R. her reasonable account of the time in which said S. was the
bailiff and receiver of said M. A. whilst she was sole and of the
said R. and M. A. after their intermarriage.

*1st Count.*—For that whereas said S., on the 3d day of May,
1819, at Windsor, in the county of Windsor, to wit, at Newfane,
in the county of Windham, and whilst said M. A. was sole, was, and
from thence until the 11th day of December, 1826, continued to
be the bailiff of said M. A. of certain lands and tenements situate
in said Windsor, to wit, [here follows a particular description of the
lands,] and during all the time aforesaid, said Susannah, as such
bailiff, had the care and management of all said lands and tene-
ments, and good and sufficient power to let, lease, demise and oc-
cupy the same, and to collect and receive the issues, rents and prof-
its thereof, and during said time, did take and receive, as such bai-
liff, all the rents, issues and profits thereof, to the use of said M. A.
and to render her reasonable account thereof to said M. when she
should be thereunto required.

*2d Count.*—And also whereas the defendant, at Windsor, &c,
on the 3d day of May, 1819, was, and from thence until the 11th
day of December, 1826, continued to be the bailiff of said M. A.,
then sole, of certain goods and chattels of said M. A., [here the
particular chattels are set forth,] all said goods and chattels being
of the value of two thousand dollars; and during all that time, said
Susannah had the care and management of said goods and chattels,
to make profit and advantage thereof to said M. A. and to ren-

WINDHAM,
*February,*
1835.

Field *et ux.*
*vs.*
Torrey.

der her reasonable account thereof to said M. A. when thereto afterwards required.

*3d Count.*—Also whereas said S. at Windsor, &c. on the 3d day of May, 1819, was, and until the 11th day of December, 1826, continued to be the receiver of said M. A. then sole, and as such received [here follows a particular of sums received, and by what hands] to render her said S's reasonable account of said sums of money to said M. A. when thereto afterwards requested.

*4th Count*—Precisely as the first, laying the time from 12th December, 1826, to 15th October, 1832.

*5th Count*—Like the second, laying the time from 12th December, 1826, to 15th October, 1832.

*6th Count*—Like the third, laying the time from 12th December, 1826, to the intermarriage of the plaintiffs.

*7th Count.*—Also whereas said S., on the 15th day of October, 1832, at Windsor, &c., was, and from thence continually to the day of the purchase of this writ, has been the bailiff of said R. and M. A. in right of said M. A. of certain lands and tenements, [here follows a description of the same lands,] and during all the time last mentioned, said S. has had the care and management and administration of said lands and tenements, for the profit and advantage of said R. and M. A., and has received the rents, issues and profits of the same, to render a reasonable account thereof, when thereunto required.

*Conclusion.*—Yet said S., though often required, has ever neglected and refused to render any account to said M. A., before her intermarriage, or to said R. and M. A., or either of them, since their intermarriage, of the time said S. was the bailiff and receiver of said M. A., when sole, and has also neglected and refused to render any account of the time said S. was the bailiff of said R. and M. A., in right of said M. A., unto said R. and M. A., or either of them—to the damage, &c.

*Plea*—And now said S. comes and defends, &c., and says, that the court here ought not to take any further cognizance of said action, because [protesting that said plaintiffs are not husband and wife] for plea, she, said S. says, that her former husband, Elisha Phelps, late of W. &c., died at said W., on the 4th day of April, 1819, leaving her, said S. a widow, with several children, their issue, and heirs to the estate of said E. P., the youngest of whom, said M. A., was then between four and five years old;—

that afterwards, at Cavendish, &c. on the 3d day of May, 1819, she was, by the judge of probate for the district of Windsor, appointed guardian in due form of law, to said M. A., and as such, authorized and required to demand, receive and take into her custody all and singular the property that should come to her in right of her father, E. P., and all other property which should otherwise belong to her, and out of the avails of the same, to provide for the support and maintenance and education of said M. A., and to render to said judge of probate, upon oath, a plain and true account of her said guardianship, when lawfully required, and to pay the said M. A , when she should arrive at full age, such balance as should be found due to her by a settlement of her guardianship account by said judge: as by the original letter of guardianship now here in court, ready to be produced, may fully appear. And afterwards, on the same day, at said Cavendish, said S. having accepted said appointment, executed a bond to said judge of probate, with good and sufficient surety, in the penal sum of five thousand dollars, with condition thereto annexed, that said guardian should well and truly perform and discharge the trust and office of guardian unto the said minor, and that in and by all things according to law; and should render a plain and true account of her said guardianship, upon oath, and of all and singular such estate as should come to her hands and possession by virtue thereof, and of the profits and improvements of the same, so far as the law would charge her therewith, when lawfully required; and should pay and deliver what, and so much of said estate, as should be found remaining due upon her account—the same being first examined and allowed by the judge, &c., unto the said minor, when she should arrive at full age, or otherwise, as said judge, &c., by decree or sentence, pursuant to law, should limit and appoint. And said S. further says, that, in pursuance of her said appointment, she has, during the time of the minority of the said M. A., received the rents and profits of said estate belonging to said M. A., and has laid out the same in the maintenance, support and education of said M. A., and for her best advantage. And that said M. A. became of age on the 12th day of August, 1832. And said S. further says, that she has always been ready, and is still ready to render to the judge, &c. a plain and true account of her guardianship aforesaid, when she shall be thereunto lawfully required. And said S. further says, that she has not at any time since her appointment aforesaid as guardian, received or intermeddled with any of the property of said M. A. otherwise than as guardian as aforesaid; and that since said

WINDHAM,
*February,*
1835.

Field *et ux.*
*vs.*
Torrey.

M. A. arrived at full age, said S. has not received or intermeddled with any of the property of said M. A. in any manner whatever. And said S. further says, that this honorable court has no jurisdiction in this suit, to compel her to render any account of the subject matter thereof, or to settle or adjust the same; but that the jurisdiction thereof belongs to the probate court, &c., which alone has cognizance and jurisdiction thereof. And this said Susanna is ready to verify, &c.

*Replication.*—And now said R. and M. A. to the plea, &c. reply and say, That by reason of any thing in said plea contained, the said court here ought not to be precluded, &c. because they say that after the appointment of said S. as guardian of said M. A. in manner and form as, &c. to wit, at Windsor, &c. on the 11th day of December, 1826, said S. took to her husband, and then and there intermarried with one Erastus Torrey, late of, &c., by reason of which said marriage, the right of said S., under said appointment, was extinguished and at an end, without this that said Susanna hath not otherwise than as guardian since her said appointment, or in any manner whatever since said M. A. arrived at full age, intermeddled with any of the property of said M. A., and this they are ready to verify, &c.

Demurrer and joinder in demurrer.

On the trial at the county court, judgment was rendered that said replication is insufficient, and that the county court have not jurisdiction, and for the defendant to recover her costs; from which the cause came by exception to this court for revision.

*Hubbard and Aikens for defendant.*—Two general questions arise upon the pleadings:

1st. Is the plea to the jurisdiction avoidable without reference to the replication? And if it is,

2d. Does the replication remove and set aside the effects of the plea?

1. We contend that the county court has no jurisdiction to settle this account. That it was the intention of the legislature, apparent from their whole legislation, to confine the jurisdiction to the probate court, when the guardianship was granted.

1. This is proper: the inventory and all the papers are there.

2. It would be a hardship to call the guardian into every county in the state.

3. It would be inconvenient, unnecessary and vexatious.

WINDHAM,
February,
1835.
_____
Field *et ux.*
*vs.*
Torroy.

4. The law has provided in this court a remedy for every possible case that can occur.

1. Guardians of minors appointed till fourteen, and till others are appointed.—See the Letter of Guardianship and Statute, page 356, § 101.—Toll edition, p. 159, 160.

2. Such guardian to account yearly, and oftener if required.—P. 357, § 104, and the Bond, Toll. ed. 160, § 94.

3. And at the full age, the ward may have a remedy on the bond—could have it only in probate court.—P. 357, § 105.—See Toll. ed. 60—may have further remedy—96, 97, 160.

4. All suits on the bond must be in the county, &c.—P. 334, § 12.

5. Probate courts may appoint *new* guardians, after powers of former ones have been decreed to have ceased.—P. 340, § 35.

6. If property of the ward has been embezzled, remedy is in the probate court.

7. At common law, no action of account would lie against any guardian, except guardian in socage.—1 Selwyn N. P. 1. 1 Bac. Abr. 17. Extended by statute—4 Anne, c. 16.

There are three kinds of actions of account:

One against a guardian in socage, as bailiff.

One against a bailiff by appointment, as merchant and merchant.

One as receiver.—1 Bac. Abr. 16. 1 Co. Lit. 172, *a*. 2d Co. 89. And must be declared against as guardian in socage.—1 Lit. Ent. And it must be set forth that he occupied as guardian.—Cro. Cha. 229. So by one tenant in common against another.—Willis Rep. 208. And if declared against as bailiff, it must be taken as bailiff by appointment.—Willis Rep. 210.

Account against one as receiver, when it should be as bailiff, is bad.—2 Lev. 126.

A man shall not be charged in account as surveyor, apprentice, reve nor as heyward.—Co. Lit. 172, *a*.

And to maintain an action of account, there must be a privity in deed by consent of the party, for against a disseizor or any other wrong-doer, no account lies—or a privity in law, as against a guardian in socage.—Co. Lit. 172, *a*. Willis, 208.

A man cannot be charged as bailiff and receiver, at common law, except by appointment.—1 Co. Lit. 200-6, § 323.

A guardian shall not be charged as *receiver*, for a receiver shall not be allowed his charges and expenses.—Co. Lit. 72, *a*.—note 75 to 89, *a*.

WINDHAM,
*February,*
1835.

Field *et ux.*
*vs.*
Torrey.

So a receiver shall not be charged as bailiff, nor a bailiff as receiver.—1 Com. Dig. 117.

No action of account was ever sustained against a guardian by appointment. In England and in New-York the appointment belongs to the court of chancery. In this state, and in the New-England states generally, the appointment is made by the court of probate, and the account must be settled when the appointment is made.

In New-York, no action will lie between guardian and ward, till the account has been settled in the court of chancery.—19 John. Rep. 304.

In New-Hampshire, no such action can be maintained till the account is settled in the probate court.—2 N. H. Rep. 395.

It has been said that no action of account would lie at common law against a guardian, except a guardian in socage.

A guardian in socage what Co. Lit. 86 *a.* socage tenure consisted of free and honorable services, and were liquidated and reduced to a certainty.—2 Bla. Com. 78, 79.

And a guardian in socage is he who is next of kin to whom the land cannot descend.—1 Bla. Com. 461. Co. Lit. 123.

And it ends at 14 years.—1 Bla. Com. 461. Co. Lit. 123.

And they are called guardians at common law.—1 Bla. Com. 461.

And it devolves upon the person designated by law, as the title descends upon the heir. And on action of right of ward lies to determine who is entitled.—2 Mod. Rep. 177.

No such guardians in this state—no such tenure.

Our statute does not extend the action of account to any guardian (See Comp. Stat. 141) except over persons for excessive drinking (p. 374-6) and to children whose parents have absconded, &c. (Stat. 377) who are required to account with the selectmen, (384).

Account against a bailiff of a manor or land, must be in the county where the land lies.—1 Com. Dig. 163. 2 Inst. 231. Also,

1st. Actions of covenant running with the land.

2d. Bills to foreclose mortgages.

3d. Or others that have respect to land.

2. Does the replication remove and set aside the effects of the plea?

The replication sets forth that the said guardian was married to Doct. E. Torrey, Dec. 11, 126, which is admitted by the demurrer.

We contend that the replication does not avoid the plea.

48

WINDHAM,
February,
1885.

Field et ux.
vs.
Torrey.

It is contended by the plaintiff, that the powers of the guardian ceased on the marriage.—See Statute p. 340—also Statute of 1816, p. 146.

But to have that effect there, must be a decree of the probate court to that effect, and the appointment of another guardian.

The true construction of the clause is, that the probate court, to make a decree that the powers of the guardian cease, would require no proof but proof of the marriage.

If the guardian continues to discharge the duties of her appointment, to receive the estate of the ward, to expend it in the maintenance and education of the ward till of age, is not the guardian chargeable? And is not the bond a security for the whole time? We contend that it must be so understood.

Shall the guardian, by her own act, avoid her liability? And shall the surety avoid his by remaining silent? We contend not.

It is in the power of the surety, by making the representation to the probate court, to protect himself in various ways, by avoiding the guardianship and having a new guardian, or by representing himself in danger and obtaining other sureties.

What would be the condition of the estate in such case? And the ward—is she without guardian? her estate without security, or any one to take care of it? We think not.

The settlement of the account cannot be divided: it must be settled at once, and before the same tribunal.

And when the ward comes of age, the guardian must render an account, and pay the balance found due by the probate court.— See Letter and Bond.

Guardians are appointed till 14, and till others are appointed.— Stat. p. 356, Letter of Guardianship.

Probate courts may appoint *new* guardians, after the powers of such guardians have been decreed to have ceased.—P. 340, § 35.

So in the case of a guardian in socage, if he receives the profits of the estate after the age of 14 years, he shall be charged as bailiff for the whole time.—1 Com. Dig. 117. 2 Cro. 219. Coke Lit. 90, a.

Besides, after the marriage, the guardian was a *feme covert*, and could not be bailiff, nor make one.—3 Vt. Rep. 485, 493.

And the ward was a minor, and could not make bailiff, nor could she be bailiff.—1 Co. Lit. 172, a.

The defendant entered upon the duties of her office as guardian, and having so entered, she could not be so charged in account.

WINDHAM,
*February,*
1835.

Field *et ux.*
*vs.*
Torrey.

One who entered as executor, and took the profit as such, cannot be charged in account.—Dyer Rep. 277, pt. 59.

Account does not lie against an executor or administrator, but only by one against another; and the administrator's account must be settled in the probate court.

So if a guardian be appointed, the whole account must be settled in the probate court, and for the whole time: it cannot be divided.

Suppose it not settled for several years, and the property continues in the hands of the guardian, he still must account.

The guardianship is void *only* for the purpose of appointing another. And would the probate court decree the guardianship void till another was ready to be appointed?

Generally, a man who receives a certainty, cannot be charged as bailiff, as if a person be appointed to receive the rent of a manor, which is in lease at a certain rent.—1 Com. Dig. 117. 2 Cro. 219. Co. Lit. 90, *a.*

*William C. Bradley for plaintiffs.*—The three first counts charge the defendant, 1. As bailiff of lands, 2. Of goods, 3. As receiver of money for a time, [which proves on computation from the pleadings to be from the taking of guardianship to the marriage of guardian, 7 years, 7 months, 9 days.) The next counts charge her in the same way, for a time extending from the marriage of the guardian [1 year and 8 months to the minor becoming 14 years old, then 4 years until the minor's full age, then 2 months and 3 days, making 5 years, 10 months, 3 days] to the commencement of the action,

Plea in abatement setting up that defendant was probate guardian of the *feme* plaintiff, from the time set up in the beginning of the three first counts to her full age, and has not since intermeddled otherwise with the property of the *feme* plaintiff, and therefore the jurisdiction of the cause of action is in the probate and not in the county court.

Replication that the defendant took husband at the time which is stated, at the beginning of the fourth count, and traversing the non-intermeddling.

Demurrer and joinder in demurrer.

Plea in abatement is bad.

1. Because it sets a guardianship defective on its own shewing under the stat. of 1797, which was in force in 1819, and though now repealed, yet all the rights and remedies accruing under it

WINDHAM,
February,
1835.

Field *et ux.*
*vs.*
Torrey.

saved. (Revd. Law, p. 358, § 110.) By the statute it was made a pre-requisite that a certain bond should be taken, *i. e.* the judge was empowered to allow and appoint guardians, "taking sufficient security of all such guardians, for the faithful discharge of their trusts. And *to account either with the judge or minor when such minor should arrive at full age*, or at such other time as the judge on complaint to him made should direct. The plea sets forth that the defendant executed a bond to the judge, with good and sufficient surety in the sum of $5000, with condition thereto annexed, that he should well and truly perform the trust according to law, and should render a plain and true *account* of her guardianship upon oath, and of all and singular such estate as should come to her hands and possession by virtue thereof, and of the profits and improvements of the same so far as the law would charge her therewith when lawfully required, *and should pay* and deliver what and so much of said estate as should be found remaining due upon her account, the same being first examined and allowed by the judge or judges, for the time being of the probate of wills and within the said district *unto the said minor when she should arrive at full age, or otherwise as the said judge or judges by his or* their *decree* or sentence, pursuant to law should *limit and appoint.* This bond differing from the one required by the statute of 1797, is not well set forth; and as the character of the defendant's trust is to be determined by that act under which the plea supposes the lands, goods, and chattels to have been delivered to her, she is not at liberty to shift it into another form by such plea. It is to be observed that the act of 1821 makes no express provision for accounting at full age, but only annually.—Probate acts of 1797, § 93—1821, § 110.

2. The plea admits the receipt of the rents and profits of lands of the *feme* plaintiff during the minority as guardian, without traversing her being bailiff or receiver, during that time or the rest of the time covered by the declaration.—1 Com. Dig. 99, 100.

3. The plea does not admit the custody of the goods and chattels, nor deny it otherwise than in an argumentative manner by saying that she never received or intermeddled with the property *except* as guardian, nor does it traverse her being bailiff and receiver thereof.—1 Com Dig. 100.—1 Went. 15.

4. The 7th and last count remains wholly unanswered, for it charges her as bailiff of *both* plaintiffs, and the denial of intermeddling, &c. is confined to the property of *feme plaintiff alone.*

5. The guardianship is set up as a defence during the whole mi-

nority, and the rent and custody of the lands, goods and chattels is admitted by the plea. The termination of the guardianship by a marriage, during the minority, destroys ths defence.

WINDHAM,
*February,*
1835.

Field *et ux.*
*vs.*
Torrey.

6. A mere readiness to account is set up which is not sufficient.

7. The plea after all, if otherwise well plead, could only amount to the common issue of never bailiff and receiver, and therefore ought to be in bar and not in abatement to the jurisdiction.—1 Com. Dig. 99.—1 Chitty, 430, 432.

A guardianship from the probate created under the statute of 1797, if entirely regular and well plead does not of itself prevent the jurisdiction of the law courts in an action of account at common law if brought after the minors have come to full age.

This leads to an examination of the appointment or creation of guardians, their duties and remedies, which their wards have against them in England and in this state.

Guardians in England, as by the civil law, were created by the appointment of the parents, by the appointment the courts, and by the disposition of law, called by the civilians testamentary, dative and legal.—1 Brown. Civ. Law, 130.—Har. notes on 88 and 89, folis of Co. Litt.—Fonb. 503, n.

Guardians by appointment of the parent were unknown to the common law, and except a slight disposition of daughters conferred by the statute of Philip and Mary, is derived from the statute 13 and 14 of Car. 2 Harg. notes, 69,—1 Mad. Chan. 265.

Guardians by appointment of the courts were guardians in chancery, guardians in the ecclesiastical courts and occasional appointments in the courts of law.—Harg. n. 70.—1 Mad. Chan. 262.—1 Swinb. 212.

In chancery the power, notwithstanding the controversies, seems fairly derivable from the civil law, which required the guardian to make inventory, to faithfully administer, to give ample security, to account or be liable to the suit of the minor when he become of age.—1 Br. C. L pp. 134, 135 and 10.—2 Kent's Com. 186.—Fonb. 521, note, 10.

In the ecclesiastical courts appointments were made through a power derived from that head in the code entitled, "the pontifical jurisdiction," and the requisites were the same, but it was confined to personal property only.—1 Swinb. 217.—1 Br. C. L. 135, n. 10.

Guardianship by the disposition of the common law, [if we disregard military and customary guardianship,] was either of the person only, or of the person, lands and heriditaments. Of the person it was either by nature as the parents of the heir apparent till

WINDHAM,
February,
1835.

Field *et ux.*
*vs.*
Torrey.

21, or by nurture of younger children, and who had no guardian otherwise, "till the age of 14, and in socage of all minors having socage tenure, and of their estates until the the age of 14, but in the latter case the guardian must be of the blood of the minor and not possibly capable of inheritage, and the tenure must be by descent and not by purchase.—Harg. 66, 67.  2 Kent, 181.— 2 Co. Litt. 88.—14 Vin. 171, 178.

But with the above limitations every tenure not military or clerical, was for this purpose understood to be in socage [fealty or allegiance being sufficient service if no other was required.—Litt. § 118.

Although from the sanctiness of personal property and simplicity of rural manners in early times, but little inconvenience would be felt, it is observable that in this state of things a period must soon come when a large amount of time and property must have been found wholly unprovided for by law, no consideration as to custody being had after 14 years of age of any but heirs apparent, none of estate by purchase after 14 years and none of personal property whatever.  Har. n. 70.—2 Kent, 181, 182.

Indeed as to the guardianship above stated, Chancellor Kent is of opinion that none except that by nature which here must extend to the persons of all children, as all are heirs apparent, can have place in this country because as to younger children the guardianship by nurture would be merged in that by nature; and as to socage, no kin by blood could be found who could not possibly be heirs to the ward.—Vol. 2, p. 184.

To remedy this difficulty a doctrine was early adopted both in the courts of equity and common law, that where a person having been guardian, continued in the custody of the estate of his ward, or assuming or pretending to the character of guardian or next friend, became possessed of the estate or effects of a minor that he should be in the contemplation of law considered *quasi* guardian and technically bailiff of the infant.—Litt. § 124.—Co. Litt. 90, *a.* 1 Mad. Chan. 74.  2 Inst. 250.  3 Bac. Abr. 419, *n. d.* Cro. Car. 303–5.  John. Rep. 66, *Byrne* vs. *Vanhousen*, 7 John. R. 157, *Jackson* vs. *Delvala.*  14 Vin. 198.

And that even where one gained possession of the estate and effects of an infant by intrusion, it should be at the election of the infant when he came of age, to make him a wrong-doer, or by dissembling the tort, to treat him as guardian or bailiff.—Cro. Car. 306.  Vern. 295.  1 John. Cas. 217.

This was the state of the law at the passage of the Statute of

WINDHAM,
February
1835.

Fiold et ux.
vs
Torrey.

Connecticut, which was used in this state at its first settlement, and which was first copied into our statute in 1779, and continued without material variation till 1797.—Con. Laws, (old ed.) 85. Slade, 321. Laws 1787, p. 59. Prob. Act, 1797, § 93.

Under these statutes, the duties and securities were the same as existed in the equity and ecclesiastical courts in England, and it is presumable they were taken from the latter, and extended to real estate.—Kent and Swain, Con. Stat.

We come now to the remedies against guardians and those having the custody of the estate or effects of infants. These were in equity, as here by bill, petition or motion; generally the two latter. In the ecclesiastical court, as in the probate here, by bringing a suit at law on the bond taken as security, and at common law by the action of account, which is the action now brought.—1 Mad. Chan, 267. 2 Kent, 2 Lev. 162. 1 John. 90, Bishop Carlisle vs. Wells.

The action of account at common law, which is probably older than the conquest, and mentioned in old Magna Charta, lay only against guardians in socage, bailiff and receiver, that is to say, no action of account could be brought against any guardian, naming him in the writ as such, except guardian in socage.—Cro. Elir. 84. Fleta lib. 1, c. 20.—Co. Lit. 172, a. see below.

To maintain the action, it was necessary that the defendant should have had the custody of the property in one of these capacities, and that there should be a privity between the parties by which is meant not a mere privity in interest, but a privity of account.—1 Bac. Abr. p. 32. Forb. 470, n.

But this privity was always constituted where one received profits, goods or money directly and avowedly to the use of the other party, and not on his own behalf, [except in the case already mentioned of an intruder, where the law for the benefit of the infant estops him from saying he received it otherwise.]—Fnb. 116.—2 Ib. 117, a. Moore, 862, Harrington vs. Deane. Dyer, 152, n.

But where a party claimed to receive the whole on his own account, (except between partners, which was governed by the law merchant) the action did not lie, as it did not before the statute between tenants in common and joint-tenants, because they might be supposed to have taken the profits claiming pertout as much as permie.—Co. Lit. 172, a.—Ib. 200–6. 1 Vin. 139.

Therefore, if either was sued at common law as bailiff, a privity indeed must be shown, there being none at law.—Willes, 209.

WINDHAM,
*February*,
1835.
Field *et ux.*
*vs.*
Torrey.

Nor did it lie for or against executors or administrators, because the receipt was neither by nor for them, nor was the privity of accounts between them and the party, but between the party and the deceased.—Co. Lit. 89, *b.*

But it has since been given by the statute for a particular part only, and not for all possible recoverable profits: therefore, no occasion to mention guardians in the statute, they being already liable fully.—1 Bac. Abr. 52.

It has already been observed, that the action lay against the real guardian in socage as guardian, and not otherwise. It may be added, that if being such, he was sued as bailiff, he might plead that he was guardian, and not bailiff; and on the other hand, if being bailiff, he was sued by the name of guardian, it would be equally defective.—1 Com. Dig. 99. Fonb. 118, *a.* & *b.*

But it has been said, that the guardian in socage, after the minor had arrived to the age of 14 years, might continue the custody, and that in such cases, though sometimes called guardian, yet not being in socage, which could not extend beyond 14 years, such persons would technically be only bailiff, and for the period after the age of 14, must be sued as such.—2 Inst. 380. 1 John. Cas. 217.

But in cases of the last description, the action may be brought entire, in which cases the guardian is declared against as guardian and bailiff.—Lit. Ent. 13. Ri. Prac. B. R. 44.

So too, if one should enter upon socage lands, claiming to hold them while the infant was under 14, by a different guardianship, (chivalry for instance,) the heir might elect to hold him as guardian in socage, or as bailiff only.—Fnb. 118. Hallis, note *a.*

So too, if relations occupy lands holden by purchase, and therefore not in socage, they were liable in an action of account as bailiffs of those lands.—Fonb. 117, *b.* Cro. Car. 306.

And as within the 14 years, any other custody than that of guardian in socage shall make the holders liable in account, so it is said generally, that whatever occurs to charge the accountant after the expiration of the 14 years, the heir shall have his action of account against him as bailiff, and not as guardian.—Lit. § 124. Co. Lit. 90, *a.* Fnb. 118, *b.* Cro. Jac. 219.

So any one entering upon the lands of an infant, whether as kin, next friend, or even intruder, creates a privity by taking the profits, and shall be liable in an action of account.—Co. Lit. 90, *a.* 1 Vern. 295. 1 Bac. Abr. (*Wilson's*) 419. 1 John. Cas. 217. Cro. Car. 303, 306. 2 P. Wm's, 645, *Bonnett.* vs. *Whithead.*

Or one receiving the profits during infancy, and continuing to do so after the ward comes of age.—3 Bac. Abr. 419.—1 Eq. Abr. 7—same, 280, *Gallop* vs. *Hobrathy*.

But it is to be observed, that the guardian or bailiff is not liable to be sued in account by the infant, until the wardship is terminated, i. e. in the case of socage guardian, until the ward has arrived at the age of 14 years, and in all the other cases to the age of 21. Har. 12, 72.   1 Root. 51, *Robertson* vs. *Robertson*.

And that accounting he shall have all his reasonable allowance and expenses.—Co. Lit. 89, *a.*   14 Vin. 186.

The result of these authorities is, that if the defendant held the custody of the estate, &c. for the infant, and received the profits for her benefit, she is liable, at common law, in the action of account, the only difference being that if the socage tenure and guardianship in socage exists in Vermont, and she was such guardian, and *had so pleaded it,* (14 Vin. 199) she would not be liable in the present action for the profits of the socage lands while the minor was under 14 years, otherwise she would be liable as bailiff for the whole time, unless the action of account is taken away in this state.

It is not pretended that such is the case, i. e. account taken away *generally.* Indeed, it was very early established by statute, having been copied into our laws in 1782, from the old Connecticut compilation, before mentioned : It is also in use in Massachusetts and in New-York, but not in New-Hampshire, where the legislation is peculiar, allowing the supreme court, where necessary for certain purposes, to appoint auditors, whose report is read to the jury as evidence.—Con. Laws, (old ed,) p. 10.   Slade, 486.   1 White's Digest, 63.   2 Kent, 188.   L. of N. H. 177.

It is not particularly taken away by any express words of the statute, nor by implication arising from any particular words : On the contrary, it seems to reserve it ; for in the bond prescribed to be taken from the guardian, by the statute of 1797, which in this respect is similar to those of 1787 and 1779, it is a condition that the guardian shall account *to the judge* of probate, *or the minor* when he comes of full age.   The one accounting being in the probate court—the other the separate claim of the party, and which, if all the accounting was to be in that court, would be surplusage.— Probate Act of 1797, § 93.

Nor does the taking of the bond supersede the action of account. It is not of a higher nature : account being the concurrent remedy where the contract is under seal, as between partners.   Where

WINDHAM,
February,
1835.

Field *et ux.*
*vs.*
Torrey.

WINDHAM,
February,
1835.

Field *et ux.*
*vs.*
Torrey.

there is a covenant to account, the action may be either. Beside, it was adjudged as early as 28 Ed. III. that where a bond was given, the condition of which was to render a faithful account of profits, &c. that the plaintiff might have his action of debt or account.—Ch. J. Treby, notes. Dyer, 22.

So too in the case reported in Dyer, (same page) which was a bond acknowledging the receipt of £20, and conditioned to lay them out for French prunes, for the use of the plaintiff, it was adjudged by three judges that the plaintiff might have debt or account at his election; but Montague held that it should be account only. Dyer, 20—same, 152 and note.

In Connecticut and Massachusetts, where a bond exactly similar is taken, it has been adjudged that the guardian is liable in an action of account.

In New-York, where security is taken by the surrogate, it is also laid down that the guardian is liable to an action of account at common law, by the infant, after he comes of age. This question would not arise in New-Hampshire, where the action of account does not occur, and where there is considerable difference in the statute bond.—1 Swift's Dig. 580. 2 White's D. 648. 12 Mass. Rep. 152, *Sargent* vs. *Parsons.* 2 Kent, 186, 188. Reeves' Dom. Rel. 322. 3 Gill & Johnson, (Maryland) 389. American Jurist, vol. 11, p. 117.

Nor is it for the public benefit that the jurisdiction should be withdrawn from a court with full power, and where this account can be conclusively and finally settled in one proceeding, and conferred upon a court of limited jurisdiction, which has no power of enforcing the account, and where, if the accounting takes place, it is not even conclusive in a suit upon the guardian's bond.—Prob. Act, p. 357, § 105. *Spedden* vs. *State,* 3 Harris & Johnson, 251.

The probate court can only take bond from the guardian who holds under its appointment, and to enforce the due performance of the office conferred by that court, it having jurisdiction over no other. When, therefore, that office ceases, the probate court cannot call to account for any thing which takes place afterwards.— Here the marriage of the guardian having by express statute extinguished all right under the probate appointment, the ward would be without remedy for the profits made subsequently.

Nor need the marriage be first proved or certified in the probate court, any more than the death of the guardian. Like forfeiture by statute, whenever and wherever the fact is proved, the extinguishment takes place from the date of the fact; otherwise, inextricable

WINDHAM,
February,
1835.
Field et ux.
vs.
Torrey.

confusion would arise in the suits which the guardian might commence for the property of the ward.

The bond taken in the probate court (may be as in the present case) for a sum less than the property shall eventually prove to be worth, and as no more can be recovered on the bond than the amount, the action of account is a necessary remedy. It is no answer to say, that more security can be required in the probate court; for if the guardian has got the property, will he give the security? Beside, the guardianship may have terminated before the surplus is known.

It has been decided, that whether the guardian is appointed by one having authority for that purpose, (as testamentary guardians in England, who give recognizance) or by operation of common law, the obligations and remedies are the same both in law and equity.—1 P. Wm's, 704, *Duke of Beaufort* vs. *Beety*. Vaughn, 179, *Bedell* vs. *Constable*. 3 Bac. Abr. 406. 3 Jacobs' L. Dic. 217. 3 Atkyns, 625.

The rule is, that if the guardian has once accounted fairly and fully, he may plead it in bar of the action, but that he could have accounted elsewhere, is no defence.—1 Com. Dig. 100.

Nor is the guardian, by the action, deprived of his privilege of allowance; nor is the difficulty of proving them even enhanced, being entitled to the same privileges and on the same evidences before the auditors that he could before the judge.—1 Caine's, 96.

In regard to the particular proceedings in the probate court, such as inventory, partial accounting, &c. they are the same as in the states of Massachusetts, Connecticut and New-York, where the action is allowed.—Stat. *ut supra*.

That the suit on the bond must be brought in the county where taken, does not affect the action more than in other suits where the plaintiff has his election, as *tress. quare*, for cutting and carrying away timber, must be brought in the county; but *de bonis* and trover for cut timber may be brought by the same plaintiff in his own county. So too ejectment in the county, but bill of foreclosure elsewhere. Beside, as the auditors are appointed by the court, the convenience of the parties as to locality may be consulted if necessary.—1 Bac. Abr. 57. Stat. Ver. p. 72, § 48—*Ib.* p. 141, § 1.

Moreover, if there should be some inconvenience, it is not for the court to balance them, especially when the question is not whether a defendant may, if he prefers it, settle with the judge in the

Windham,
February,
1835.

Field *et ux.*
*vs.*
Torrey.

county where the judge lives, which after all may in many cases be that of neither party ; but whether, when he wholly neglects and refuses to settle at all, he may avail himself of his own wrong to prevent the plaintiff from seeking his right, agreeable to the long established usages of law.

The opinion of the court was delivered by

Collamer, J.—This is a plea to the jurisdiction of the court, insisting that the defendant was guardian, and that the whole jurisdiction in relation to her guardianship is exclusively in the probate court. The replication avers, that the defendant ended her guardianship by marriage, in 1826 ; and to this, the defendant demurs. This is not an objection to the *form* of the action, and it is therefore unnecessary to decide whether either or all of the counts should have been against the defendant, as *guardian*, or as *bailiff* ; or to inquire whether that part which relates to the land should have been in Windsor county, for the plea does not insist on such a jurisdiction in Windsor county court. It is also unnecessary to inquire whether all of these counts can be sustained ; for if any one of them can, under the circumstances stated in the plea and replication, then this plea to the jurisdiction must fail. In all pleas to the courts of general jurisdiction, it must be shown that there is another court of exclusive jurisdiction, in which effectual justice, to the full extent to which the plaintiff is entitled, may be administered. 1 Chit. Plea. 432, and the authorities there cited.

If the defendant's marriage did immediately, by operation of law, put an end to her guardianship, in 1826, and yet she continued to receive the rents and income until the full age of the ward, or until the commencement of this suit, the plaintiffs could not have entire remedy in probate, and this action must be sustained, or the plaintiffs are without redress, at least in relation to that part subsequent to 1826.

The counsel for the defendant insist, that inasmuch as the defendant's marriage was not noticed in the probate court, and she continued to act, she was still legal guardian. It is insisted that the probate court must pass on the subject, and find the marriage and decree on the subject, and that it is like the death, or incompetency, or removal of one joint administrator. The statute on these two subjects is entirely different. By the 34th section of the act constituting probate courts, it is provided that when any executor, administrator or guardian shall reside without the state, or neglect to account on proper notice, or neglect to perform any decree of said

WINDHAM,
February,
1835.

Field et ux
vs.
Torrey.

court, or shall abscond or become *non compos mentis*, or otherwise incapable or unsuitable to discharge the trust, such *court may decree* their powers to cease. By the 38th section, it is provided " That when a *feme sole,* appointed executrix, administratrix, or guardian, shall marry, *such marriage shall extinguish her right,* under such appointment."

By the 35th section it is provided "in all cases where the executor, administrator or guardian shall die, or where the probate court shall decree that their powers shall cease, or *their right be by law extinguished,* such court shall have power," &c. to grant power to others. This collation of the provisions of the statute, shows obviously that in relation to a number of causes of incompetency, the statute empowers the court to pass upon them, but the trust does not cease until the court so decree. It is also apparent that it is contemplated vacancies may exist in three modes, to wit : 1, death—2, where the court decree the trust to cease, and 3, the right *being by law extinguished.* And it also appears that the marriage of a *feme sole* guardian is of the last class. *Such marriage shall extinguish their right.* Whether the trust and power shall survive on the death of a joint administrator, is a case on which the probate court is to decree. The statute seems clear and explicit, and safety and expediency would appear to sustain this view. By marriage, the wife passes under the control of the husband, and becomes incapable of keeping the effects of the ward separate from those of the husband. She has contracted a relationship of legal dependence, inconsistent with her trust, and for which her bail cannot be holden. She cannot even sue for the debts of her ward, without joining her husband, and then the judgment would survive to him. That a course so fruitful of incongruity is to arise or continue, because the probate court does not take official cognizance of a marriage of which it has no means of knowledge, is both against the express provision of the statute and common safety and security. The defendant's right and power as guardian, ceased upon her marriage in 1826. For the use and income after that time, the probate court could not *compel* account, and it therefore follows that the county court had jurisdiction of this cause. Here we might dispose of this question ; but as the entire question has been argued, and the parties consider a full decision not only important to general practice, but to the ultimate decision of this case, the court proceed further.

Can this action be sustained for an account of those things which were done and received by the defendant within her powers of

WINDHAM,
February,
1835.

Field *et ux.*
*vs.*
Torrey.

guardian. The only guardian known to the common law, who had the custody of estate, was that of guardian in socage. Guardians by nature, and for nurture, and in chivalry, only extended to the person. Against the guardian in socage, account could be sustained, declaring against him as guardian, and in that way only. It is now argued from this, that the action could be sustained against no other. This does not follow, for no other was then known. It fully appears that if any person got into possession of the heir's lands, and used them as for him, and not in their own right, the action of account could be sustained agaiust him as bailiff. Therefore, this action could have been sustained at common law. Perhaps it is in analogy with the ancient common law, sustaining account against the only *guardian known to that law,* that the courts in this country, considering the common law as having an elastic and expansive principle, adapting itself to the exigencies of society, have sustained this action against such *guardians as are known to our laws.* This analogy would be perfect if the declaration were against them as guardian, not bailiff. The defendant here seems to insist on abatement on the same matter on which a guardian in socage insists, when sued as bailiff, that is, that he is not sued in his right capacity ; but goes further, and insists that no action in any form can be sustained in the common law courts. This seems to be insisting on the privilege of a guardian in socage, and yet disclaiming his liability.

Again, when a guardian in socage held beyond his ward's arrival at the age of 14 years, the action could be sustained against him as bailiff. This the defendant has done by holding beyond the termination of her guardianship, her marriage. But inasmuch as all persons, even intruders, who used the ward's estate for the ward, were subject to this suit as bailiff, and none could excuse themselves but guardian in socage, this defendant must be liable.

It is however insisted that when the guardianship is by appointment and not by descent, as in socage, there the action cannot be sustained. To sustain this doctrine, no decision is produced, not even in relation to testamentary guardians under the statute of Charles II., nor as to guardians and tutors appointed by the ecclesiastical courts in England, before that period ; nor in relation to guardians in chancery. That such actions do not appear in the books against such *guardians,* may be ascribed to two reasons : 1st, If such suits were brought, they would be against them as bailiffs, as already shown.—2d, Matters of trust and account went

WINDHAM,
February,
1835.
Field *et ux.*
*vs.*
Torrey.

into chancèry. This, however, did not repeal the action of account, and it has always been left on foot in this country. We are therefore not furnished with a single English decision that this action would not be there sustained, even for a guardianship by appointment.

Can it be sustained where the guardianship is not only by appointment, but appointment by a board having power to compel an account, and possessing an entire system. In Connecticut, where the probate court appoint the guardian, take bonds, and can compel an account, a system as entire as ours, it fully appears that after the termination of the guardianship, the *action* of account is sustained. So it also appears in Massachusetts. In New-York, where a surrogate may appoint a guardian, taking bond or the chancellor without, and where all is a perfect system of accounting in chancery, still it appears that at and after the termination of the guardianship, the ward may have an action of account at common law, and the court of chancery does not enjoin or interfere with it. This never extends to intermediate accounting.

However much we are inclined to confine parties to a single tribunal, and not to increase the already arduous duties of the county courts, and whatever might be our views of convenience, we feel constrained, from these principles and authorities, to hold that this action of account may be sustained, after a guardianship ceases, for what transpired under it.

It is not to be disguised, that the probate court is not clothed with *all* the power wanted for the accomplishment of the object of this action, the power of compelling an account and enforcing the collection of the balance found due, but more especially giving judgment for what accrued after the termination of the guardian's life.

Judgment reversed, and the defendant to answer over.