## PICKERING AND WIFE *v.* DeRochemont.

When the wife is joined with the husband as plaintiff, the declaration should show that the wife is the meritorious cause of action.

A declaration in assumpsit, that defendant being indebted to husband and wife for money had and received for their use, in consideration thereof promised to pay them, &c., is bad.

Under a declaration of this kind the plaintiff introduced evidence of an indebtedness and promise to the wife before marriage. *Held* that a nonsuit was properly ordered on the ground of variance between the declaration and proof.

But in such case the plaintiff may amend his declaration so as to correspond with his proof.

Although a specification, when it describes a cause of action consistent with the declaration and one that can properly be proved under it, becomes and is to be treated as a part of the declaration, yet a specification cannot enlarge, alter, or amend a declaration.

When the share of one of several *cestui que trusts* in a trust fund is ascertained and known, as where it is a moiety, or other aliquot part of the fund, a suit for a breach of trust, may be maintained against the trustee, by the person entitled to that share, without joining the other *cestui que trusts* as parties.

While the relation of guardian and ward is subsisting, the ward, before arriving of age, cannot maintain an action at law against her guardian, for her property in his hands.

The same is generally true between a trustee and a *cestui que trust*, while the trust continues. A court of equity is the only tribunal to which the *cestui que trust* can have recourse for redress, in relation to the trust fund during the continuance of the trust.

But where the defendant was appointed guardian of the plaintiff when a minor, in a foreign country, and received money belonging to his ward in trust as guardian, and then both removed to this country;—*held* that, as our Probate court can have no jurisdiction in the premises, the plaintiff may maintain an action for money had and received after becoming of age, and the relation of guardian and ward had ceased to exist between them, for the money in the guardian's hands belonging to the plaintiff.

So where a trust was created for a specific purpose, and for a limited time, and that purpose has been accomplished, and the time has expired, and a balance remains in the hands of the trustee unexpended, the person creating the trust may maintain an action for money had and received, to recover such balance.

When the plaintiff's right to recover depends upon the proof of many distinct facts, one of which is a demand made before suit, an auditor's report in favor of plaintiff is sufficient *prima facie* evidence that all these facts were proved, and the jury would, upon the evidence of the report alone, properly allow all the items which the auditor allowed.

In ASSUMPSIT, the declaration was as follows :

"To answer to Frank T. Pickering of Newington, in said county, husbandman, and Sophia E. G. Pickering of said Newington, wife of said Frank T. Pickering, matron.

"In a plea of the case, for that the said defendant, at said Exeter, on the day of the purchase of this writ, being indebted to the said plaintiffs in the sum of five thousand dollars, for so much money before that time had and received by said defendant to and for the plaintiffs' use ; and being so indebted, in consideration thereof, then and there promised the said plaintiffs to pay them that sum on demand. Yet, though often requested, said defendant has never paid the same, but neglects and refuses so to do."

The writ was dated 7th Sept. 1850.

By leave of court, the plaintiffs filed, Nov. 10, 1851, a specification, as of September Term, 1851, as follows :

1. "The plaintiffs claim to recover in this action the sum of $2,142.-85, with lawful interest thereon, being one seventh part of the value of certain real estate lying in Demerara, in South America, a Colony of Great Britain, and which came into the hands of the said defendant, in

trust, for the seven children of Mrs. M. L. S. Dewitt, late of said Demerara, deceased, on the 6th day of December, A. D. 1828, being the proceeds of a lot of land situate in Werken Rust, in said Demerara, and known as number ten, with all the buildings thereon, and the passage leading to the front road. Also, the water or mud lot situate in said Werken Rust and known as number ten, with the buildings thereon. Also, a wharf or stelling situate in said Werken Rust, of which said seven children of said Mrs. M. L. S. Dewitt, said Sophia E. G. Pickering, formerly Sophia E. G. Dewitt was one, all which said real estate the said defendant sold at Demarara aforesaid, to wit: at said Exeter, and received the avails thereof together with legal interest on the same in trust to the use of the said seven children.

2. Also, the further sum of $1771, being the seventh part of the value of twenty-five slaves belonging to the said heirs of the said M. L. S. Dewitt, and which came into the hands of the said defendant, at said Demerara, in trust and to the use of the said heirs, on the sixth day of December, A. D. 1828, and which were afterwards sold by the said defendant and the avails thereof received by him and held as aforesaid, together with legal interest on the same sum, the holding and selling of said slaves being then lawful in said Demerara.

3. Also, the sum of $1200, with legal interest thereon, being the half part of the value of six other slaves belonging to Antoinette S. F. A. Nutter, formerly Antoinette S. F. A. Dewitt, and Sophia E. G. Pickering, one of the plaintiffs in this action, formerly Sophia E. G. Dewitt, two of the heirs and minor children of said Mrs. M. L. S. Dewitt, and which came into the hands of the said defendant at said Demerara, to wit: at said Exeter, in trust and to the use of the said Antoinette and said Sophia on the sixth day of December, A. D. 1828, and which were afterwards sold by said defendant and the avails thereof, together with legal interest thereon, received and held by him as aforesaid.

4. Also, the sum of $3000.00, being the one seventh part of the hire and earnings of said twenty-five slaves belonging to the said seven heirs, children of Mrs. M. L. S. Dewitt, which said sum accrued as aforesaid, and was received by him, the defendant, in trust and to the use of the said seven heirs, at said Demerara, to wit: at said Exeter, within and during the space of twelve years from and next after the sixth day of December, A. D. 1828, of which heirs the said Sophia E. G. Pickering was one.

5. Also, the sum of $3000, with legal interest thereon, being the one half part of the hire and earnings of said six slaves belonging to Antoinette S. F. A. Nutter, formerly Antoinette S. F. A. Dewitt, and said Sophia E. G. Pickering, formerly Sophia E. G. Dewitt, two of the heirs and minor children of Mrs. M. L. S. Dewitt aforesaid, and which said sum accrued as aforesaid, and was received by the said defendant at Demerara aforesaid, to wit: at said Exeter, in trust and to the use of the said Antoinette and the said Sophia, at said Demerara, within and during the space of twelve years from and next after the sixth day of December, A. D. 1828.

6. Also, the sum of $2000, with legal interest thereon, being the one

seventh part of the Government compensation under the emancipation act of Great Britain for certain other twenty-five slaves belonging to the said seven heirs, children as aforesaid, which said sum accrued and was received, at said Demerara, to wit : at said Exeter, by said defendant in trust and to the use of the said seven heirs of said Mrs. M. L. S. Dewitt, on or about the first day of January, A. D. 1838.

7. Also, the further sum of $1200, being the one half part of the Government compensation under the emancipation act of Great Britain, for certain other six slaves belonging to Antoinette S. F. A. Nutter, formerly Antoinette S. F. A. Dewitt, and Sophia E. G. Pickering, two of the heirs and minor children of Mrs. M. L. S. Dewitt aforesaid, which sum accrued as aforesaid, and was received, at said Demerara, to wit : at said Exeter, by said defendant in trust and to the use of the said Antoinette and Sophia, on or about the first day of January, A. D. 1838.

8. Also, the sum of $2000, with legal interest thereon, being the one seventh part of the value of certain other personal property belonging to the said seven heirs of the said M. L. S. Dewitt, which came into the hands and possession of the said defendant, at said Demerara, to wit : at said Exeter, on or about the sixth day of December, A. D. 1828, in trust and to the use of the said seven heirs, and which were afterwards sold and the avails thereof received and held by the said defendant as aforesaid.

9. Also, the further sum of $2000, with legal interest thereon, being the one seventh part of certain moneys, notes, drafts, acceptances and other securities for moneys belonging to the said seven heirs and minor children of said M. L. S. Dewitt, all which came into the hands and possession of the said defendant in trust, and to the use of the said heirs, at said Demerara, to wit : at said Exeter, on or about the sixth day of December, A. D. 1828.

10. Also, the further sum of $18,313.85, with legal interest thereon, being the share of said Sophia E. G. Pickering, formerly Sophia E. G. Dewitt, as one of the heirs in the real and personal estate, of M. L. S. Dewitt, late of Demerara aforesaid, deceased ; all which real and personal estate, the share as aforesaid of the said Sophia, together with the avails thereof, came into the hands and possession of the defendant as guardian of the said Sophia, at Demerara aforesaid.

11. Also, the further sum of $18.313, with legal interest on the same sum, being the share of the said Sophia E. G. Pickering, formerly Sophia E. G. Dewitt, as one of the seven heirs in the real and personal estate of her late father, Castine Cornelius Dewitt, late of Demerara aforesaid, deceased, all which real and personal estate, including the share as aforesaid of the said Sophia and the avails thereof, came into the hands and possession of the defendant as guardian of the said Sophia, and in trust to her use.

12. Also, the further sum of $1650, with legal interest on the same sum, being for the labor and services of the said Sophia E. G. Pickering, formerly Sophia E. G. Dewitt, done and performed in the family of the defendant, and in and about his business, at his request, during the period of eleven years, being all that space of time between the year

1834, and the year 1846, the avails of which labor and services were received, retained and holden in trust by the said defendant, as her guardian, in said Demerara.

13. Also, the further sum of $3000, together with legal interest thereon, being one seventh part of the rents, profits and income of certain other real estate belonging to the seven heirs aforesaid, and which accrued at Demerara aforesaid, during the space of eight years next after the sixth day of December, A. D. 1828, and were received by the defendant, and which seventh part whereof was received at Demerara aforesaid, to wit: at said Exeter, by the defendant as guardian of the said Sophia, and retained by him in trust to her use.

14. Also, the further sum of $1032.62, with legal interest thereon, from the second day of January, A. D. 1838, being the amount of New York five per cent. stocks belonging to the said Sophia, and which said stocks were sold by the defendant, at said New York, to wit: at said Exeter, in the year 1845, and the avails thereof received by him to the use of the said Sophia.

15. Also, the sum of $400, with legal interest thereon, being the amount of a note given by one George DeRochemont, for so much money by him received of the defendant out of moneys in his hands belonging to the plaintiffs, the amount of which said note with interest on the same was received by the defendant, A. D. 1846, at Exeter, aforesaid, to the use of the said Sophia.

By their Attorneys,          WELLS & BACON.

At September Term, 1851, the defendant pleaded the general issue, with a notice of set off of certain claims annexed, amounting to $5,146.05, not material to be stated, and issue was joined on the plea.  At the same term the case was referred to Henry A. Bellows, Esq., as Auditor, who was duly sworn, and heard the parties, &c., on the 14th of August, 1854, and at various times to March 2, 1859, and made his report September Term, 1859, when the defendant elected a trial by jury.

The Auditor reported a statement of the accounts between the parties, as follows:

"And the Auditor having fully heard and considered the said parties and their counsel, their several pleas, proof and allegations, reports the following statement of accounts between them—that is, between the said Sophia E. G. Pickering and the said DeRochemont—the same accruing before the marriage of the said Sophia, and being outstanding at the time of said marriage, viz:

Frederick Wm. DeRochemont, to Sophia E. G. Pickering,     Dr.
1836, Feb. 17.   To one seventh the amount of
     moneys received by you to the use of the minors
     De Witt, including Mrs. M. L. DeRochemont,
     and which is credited by you—after deducting
     disbursements—all shown in the general account marked " A," and herewith exhibited as
     part of this report—whole sum credited,          $12248.10

Less disbursements and charges allowed as per general account aforesaid,                     $4879.29

Also, deduct for services in managing business and including commissions,                     $750.00
                                                                              ————$5629.29

                                                                              $6618.81

              One seventh is                                                   945.54

To one seventh amount received for the use and hire of slaves of the seven heirs, and not credited by you, from Dec. 1828 to Feb. 17, 1836, viz: Marianne, Jan, Ellis, Constance, Present, Jeannette and Sequestra;

              Whole amount received,                           $680.00
              One seventh is                                                    97.14

To one seventh of the rent of the family dwelling-house in Demerara, received between Dec. 1828, and Feb. 17, 1836, for parts occupied by Castine and Leonard Charles DeWitt,                     60.00

To one-half of amount received for the use and hire of the slaves Welcome and Charlotte, belonging to plaintiff, Mrs. Pickering, and Mrs. Nutter, not including services of Charlotte for defendant,                                                          120.00

To one seventh of amount of proceeds of sale of real and personal estate of the seven heirs, sold Feb. 17, 1836.                                          846.00

To one seventh compensation money received for slaves of the seven heirs,                              957.62

To one half compensation money received for the slaves of the plaintiffs, Mrs. Pickering and Mrs. Nutter,                                                  222.19

                                                                              $3248.49

                              Cr.

By amount allowed of his charges against Mrs. Pickering, filed in set off as per ac., exhibited herewith, and marked B, as part of this report,   $2372.49 1-2

By services in managing the business and taking charge of the plaintiff, Mrs. Pickering, from Dec. 28, 1828, to Feb. 17, 1836.                    100.00

By further services in managing affairs and taking charge of Mrs. Pickering from Feb. 17, 1836, to April 10, 1841,                                     50.00
                                                                              ————2522.49 1-2

                                                                              $725.99 1-2

Dr.

| | |
|---|---|
| 1859, Sept. 10.   To balance of interest on debit beyond interest on credits to this date, | $1782.01 1-2 |
| Balance due Sept. 10, 1859, | $2508.01 |

which sum of $2508.01, the auditor finds to be due from the said Frederick Wm. DeRochemont to the plaintiffs, Pickering and wife, on this 10th day of September, A. D. 1859, in the manner before stated.

And the auditor disallows all the other items and claims stated in the plaintiffs' specification, and the defendant's set off, including such items of charge made by defendant in the general account by him exhibited as part of his set off, as are not set down as allowed in the general account annexed to this report as aforesaid."

In an additional report, the auditor, by agreement of parties, for the purpose of raising certain questions of law arising in the case, reported certain statements of fact, which were not offered or put in evidence, parts of which are hereafter stated. Upon the trial, the specification was objected to, as setting up matters inadmissible under the declaration :

1st. As showing a cause of action different from that declared on, in this, that the declaration alleges an indebtedness of the defendant to the plaintiffs jointly, while the specification states a debt to the wife before her marriage.

2d. As showing a claim of the plaintiffs, for money received by the defendant as trustee, or guardian, in Demerara, for which an action at law will not lie, the remedy being in the court of probate, or in equity.

3d. As showing not a sole claim of the plaintiffs, or either of them, as alleged in the declaration, but an indebtedness of the defendant to the seven children of Mrs. Dewitt, of whom the plaintiff, Mrs. Pickering, was one, jointly, and for which one cannot sue alone.

To these objections it was answered, that the specification is to be taken as part of the declaration, and no objection being made to it until July 26, 1858, near the close of the hearing before the auditor, the objection was waived by the delay.

The objections were overruled, and the specification admitted, and defendant excepted.

The auditor's report being offered in evidence, the defendant objected to its admission :

1st. Because the finding of the auditor is of facts at variance from the claim set up in the writ, which is a debt due husband and wife, while the indebtedness found is to the wife alone, before her marriage.

2d. Because it shows that the defendant held the money sued for as trustee, or guardian, for which an action at law does not lie.

3d. Because it shows a joint claim of seven persons, in a suit for which all must join, and not a sole claim of the plaintiff, Mrs. Pickering, or of her and her husband.

The auditor's report was admitted, and the defendant excepted.

Upon this evidence the plaintiffs rested their case, and thereupon the defendant moved for a nonsuit;

1st. Because there is a variance between the evidence and the declaration, and the evidence offered does not support the declaration. The declaration alleges a promise to the plaintiffs jointly. The evidence tends to prove only a promise to the wife while sole.

2d. Because the evidence shows that other parties should be made plaintiffs. No item of the plaintiffs' claim is proved to rest on a promise to the plaintiffs alone. All the promises proved are to the plaintiff, Mrs. Pickering, and others not parties to this suit.

3d. The auditor's report proves the money received in trust, and as guardian for the plaintiff. No settlement of accounts as trustee, or guardian is shown, nor any proceeding in any court of probate, or equity.

4th. The money being shown to be received by the defendant, as guardian or trustee, there is no evidence, that any demand was made of it before suit—no demand is found by the report—it is not to be inferred from the report.

The court thereupon for the purpose of raising the questions of law arising in the case, ordered a nonsuit, subject to the opinion of the whole court.

And the parties thereupon agree that certain other questions arising in the case may also be reserved.

I. The plaintiffs move for leave to amend their declaration. The defendant objects that no such amendment, as is desired, is admissible, as it would change the cause of action.

II. The defendant moves for leave to add to his notice of defence, a notice that the defendant will rely on the statute of limitations.

On these points the auditor reports as follows:

"1st. On the 15th of August, A. D., 1854, the defendant's counsel moved to amend the pleadings, by adding to the notice of set off the following: " The plaintiffs will take notice that the defendant will further rely upon the statute of limitations as a defence to the claims of the plaintiffs named in the above action,"—which motion was in writing, and signed by defendant's counsel; but the auditor having no power to grant the motion, the same is reported as requested by defendant's counsel.

2d. At the commencement of the hearing before the auditor, on the 26th day of July, A. D. 1858, and near the close of the testimony, the defendant's counsel objected, for the first time, that there was a variance between the declaration and the proof, upon the ground that the count was upon promises to the husband and wife, and the proof was of promises to the wife alone, before marriage.

On this point, it appeared that the money which the plaintiffs sought to recover was derived from the use or sale of certain real and personal estate in which the plaintiff, Mrs. Pickering, had an interest, and which came into defendant's hands as her guardian, prior to the marriage of the plaintiffs, and at various times, December, 1828, and March, 1841, and chiefly, prior to 1837—the plaintiffs having been married in March,

1847—and Mrs. Pickering becoming twenty-one years of age, June 12, 1840.

And it appeared that before the marriage aforesaid, the defendant rendered to the plaintiff, Mrs. Pickering, the several statements of account marked from one to three inclusive, and that, after the marriage, and before this suit, the said accounts were the subject of discussion between the parties, respecting both the charges and credits. The case was opened, and the hearing proceeded upon the grounds of moneys received by the defendant as guardian of Mrs. Pickering, without any objection, until said July 26th, A. D., 1858."

III. The plaintiffs claim that they are entitled to recover for one seventh of the services which one slave, and for half of the services which another slave rendered to the defendant, or if not entitled to recover for said services under this declaration, that they should be allowed for said services by offsetting the same against charges for board of Mrs. Pickering, allowed by the auditor or which may be proved by the defendant.

On this point the facts found by the auditor are as follows :

" 5th. The auditor further reports that, in addition to the amount he has charged the defendant with for moneys received for the use and hire of slaves, he finds that the slave Marianne, belonging to the seven heirs, and the slave Charlotte, belonging to Mrs. Pickering and Mrs. Nutter, worked for the defendant a large part of the time from December, 1828, to February 17, 1836, for which he has allowed and paid nothing ; and the value of such services for the defendant by said Marianne, after deducting expenses for her support, is three hundred and fifty dollars as cash on the seventeenth day of February, A. D. 1836, and that the services so rendered by said Charlotte, after similar deductions, were of the value of three hundred and eighty dollars as cash on said 17th of February, 1836.

And the auditor finds that, in case the court should hold that the value of these services may be recovered under the declaration in this case, then the plaintiffs are entitled to recover, in addition to the amount reported, one seventh part of the value of the services of the said Marianne, one half the services of the said Charlotte, both amounting to two hundred and forty dollars, together with interest at five per cent., from February 17, 1836, to April 10, 1841, and since that time at six per cent."

If the court should be of opinion that the auditor's report is not evidence of a demand, still the nonsuit is to be set aside, so far as that point is concerned, to allow other proof of a demand.

The questions arising on the foregoing case were reserved for decision at the law term.

*Hatch* and *Rollins*, for defendant.

*Christie* and *Stickney*, for plaintiffs.

SARGENT, J.   The first question raised by the motion for a nonsuit is as to a variance between the declaration and the specification and the

evidence introduced in support of it.    It is objected that the declaration alleges an indebtedness of the defendant to the plaintiffs jointly, while the specification and the evidence (the auditor's report,) state and prove an indebtedness to the wife alone before marriage.    This objection, if seasonably taken, is well founded.    The contracts stated in the declaration and in the specification are entirely different.    The declaration is, that the defendant being indebted to the plaintiffs, on, &c., in the sum of, &c., for money before that time had and received by the defendant, for the plaintiffs' use, in consideration thereof, then and there promised the plaintiffs to pay them, &c.

The 1st, 2d, 4th, 6th, 8th and 9th counts in the specification claim one seventh part of the avails of certain real estate and slaves, and the hire and earnings of said slaves, and the Government compensation paid for said slaves and for certain other moneys, all which it is alleged came into defendant's hands, in Demerara, in trust for the seven children and heirs of Mrs. M. L. S. Dewitt, late of said Demerara, who died December 6, 1828, of which said seven children and heirs, the plaintiff, Mrs. Pickering, is one.

. The 3d, 5th and 7th counts in the specification claim one half of the avails of certain other slaves, and their hire and earnings, and the Government compensation paid for the same, which it is alleged came into the de fendant's hands in said Demerara, in trust for two of the minor children and heirs of said Mrs. Dewitt, *viz :* Antoinette and Sophia, the plain tiffs.

The 10th count claims the share of the plaintiff, Sophia, as one of the heirs to the real and personal estate of Mrs. M. L. S. Dewitt, late of Demerara aforesaid, all which real and personal estate, the share of the said Sophia with the avails thereof, came into the hands and possession of defendant as guardian of said Sophia.

The 11th count claims the share of said Sophia in the real and personal estate of her late father, Castine Cornelius Dewitt, late of Demerara, deceased, all which and the avails of the same came into the hands of defendant as guardian of said Sophia.

The 12th count is for the personal services of plaintiff, the said Sophia, for the defendant, and in his family, at his request, for eleven years between 1834 and 1846, the avails of which labor were held by the defendant as guardian of said Sophia, the plaintiff.

The 13th count is for rents and profits of certain real estate of the plaintiff, said Sophia, received by the defendant at said Demerara, as guardian of said Sophia.

The 14th and 15th counts claim the amount of certain stocks of the plaintiff, said Sophia, which the defendant sold in New York, and certain moneys paid him in 1846, which belonged to her, the avails of all which he received and held to the use of the said Sophia.

In all these counts in the specification, money is claimed as having come into the hands of defendant, or services as rendered for him, for which he was liable to said Sophia, and which he is alleged to have held *in trust for*, or *to the use of*, or *as guardian for*, said Sophia while sole, and the implied promise was to her, and not to these two plaintiffs,

nor was it the money of the plaintiffs that defendant received, but the money of the said Sophia while single.

The authorities all agree that a declaration like this cannot be supported by such evidence, and not only so, but that the declaration is bad in itself without regard to the evidence. *Abbot and wife* v. *Blofield*, Cro. Jac. 644, is in point. The whole case as reported is as follows : " *Assumpsit*, whereas, the defendant received of the plaintiff's money by the hand of the plaintiff's wife, &c., that the defendant, in consideration thereof, promised unto them to pay it at such a day, and alleging the breach for non-payment. The defendant pleaded *non assumpsit*, and found for the plaintiffs ; and moved in arrest of judgment, that this promise is void, being for moneys of the *baron* and *feme*, and *ad damnum eorum* cannot be, for a *feme covert* cannot have goods with her *baron*, and although it were objected that it may be for moneys due to the *feme*, *dum sola fuit*, or for rent during the coverture, it was held that it shall not be so intended without it hath been shown, wherefore it was adjudged for the defendant."

*Bidgood* v. *Way & wife*, 2 W. Black. 1236. Defendant and wife brought an action in which one count was for money had and received, and after default, the original defendant brought error, and the judgment was reversed and it was held that a husband and wife cannot join in assumpsit without stating the interest of the wife. So a declaration in replevin by J. S. and his wife, without showing any cause for joining the wife, is bad on demurrer, *Serres & wife* v. *Dodd*, 2 N. R. 405. And where husband and wife declared jointly with A. upon an agreement to demise lands of the wife to B., and averring the promises to the three, but the evidence showed that the promise was made only to the wife and A.—held a fatal variance, even though the husband had received rent from the tenant subsequent to the agreement, *Saunderson* v. *Griffiths*, 5 B. & C. 909 ; *Titus* v. *Ash*, 24 N. H. 319, 338. Where the wife is joined the declaration must distinctly show that the wife is the meritorious cause of action, as it will not be presumed ; Brown on Actions at Law, 237 ; *Phillishirk & wife* v. *Pluckwell*, 2 M. & S. 393 ; *Thorne & wife* v. *Dillingham*, 1 Denio 254.

In general, a wife cannot join with her husband in an action upon any contract made during coverture, whether with the wife alone as the party, or with the two jointly. There are some exceptions which are noted, where she may join, and it is said that in all such cases, the declaration must distinctly state the particular cause for making the wife a party to the action, for it will not be presumed that any such cause exists.

The declaration before us is bad, therefore, for not setting forth the manner in which the wife is interested. No promise could be implied to any one but the husband in the case stated in the declaration, because, though the money had been received of both, or of the wife only during marriage, it would be the husband's money, and would be received to his use and not to the use of the wife. The several provisions of our statutes authorizing married women to sue and be sued in certain cases, as though they were sole and unmarried, does not affect the rule which is

to be applied in other cases not thus provided for.  *Jordan* v. *Cummings*, 43 N. H. 134.

This defect would be good ground of error, or of a motion in arrest of judgment, or of demurrer, and the motion for a nonsuit on the ground of a variance between the proof and the declaration, was, we think, properly made when the plaintiff had closed his evidence, and as the case stood it was properly allowed, unless the specification is to be taken as a part of the declaration, or as an amendment to the original declaration.  A specification only becomes part of the declaration when it states a cause of action consistent with the declaration, and one that can be properly proved under the declaration.

The specification cannot enlarge or modify, alter or amend, the declaration, nor does any delay in making objection to the specification, or the fact that it is not objected to at all, change its effect.  Suppose the declaration to be for money had and received, and the plaintiff should specify a contract for the delivery of specific articles, and the defendant pleads the general issue.  Defendant may object to plaintiff's specification if he chooses and have it rejected, or he may wait until trial, and if his evidence only proves the contract set forth in the specification, he may object that there is a variance between the declaration and the proof, and move a nonsuit upon that ground.

The second ground stated as the foundation for the motion for a nonsuit, *viz* : that other persons should be joined as plaintiffs, is not tenable.  Those counts in the specification which seek to charge the defendant as guardian of plaintiff, Sophia, do not allege that he was guardian of any of the other children of Mrs. Dewitt.  For aught that appears, somebody else may have been guardian of all the other children, and he is here sought to be charged only for the share of this plaintiff, Sophia, in the property specified.

But in some of the counts, if not in all of those which charge that he is liable as trustee, it is alleged that he held the whole property of Mrs. Dewitt, in trust, for her seven children and heirs, and one-seventh of the same is claimed as the particular part or share to which the plaintiff, Sophia, is entitled.  And so of the property owned by two only of the children, plaintiff claims one-half as the amount she is entitled to receive.

Now, when a contract is made with several persons, whether by parol or otherwise, if their legal interests be joint, they must all, if living, join in an action *ex contractu*, for the breach of it, 1 Ch. Pl. 8.  But when the legal interest and cause of action of the covenantees are several, each may and should sue separately for the particular damage resulting to him as an individual, although the covenant be in its terms joint, 1 Ch. Pl. 10.  Thus if a party covenant with A. and B. to pay them $10 each, or an annuity to each, then, though the covenant may be in terms joint, yet the distinct interest of each, in a separate subject matter, shall attract to each an exclusive right of action in regard to his own particular damage, and they cannot maintain a joint action, even though the deed contain stipulations and covenants which are joint.  Ch. Pl. *supra.*

If the share of one of several *cestui que trusts* in a trust fund has been

ascertained and set apart, as where it is a moiety, or other aliquot part of the fund, a suit for a breach of trust may be maintained against the trustee, by the person entitled to that share without joining the other *cestui que trusts* as parties. Hill on Trustees, 519 ; *Perry* v. *Knott*, 5 Beav. 297 ; *Smith* v. *Snow*, 3 Mad. 10 ; 1 Daniell's Ch. Pl. and Pr. 265.

Again, it is objected that, as the auditor's report shows that the money was received by defendant in trust and as guardian for said Sophia, no action at law can be maintained until some settlement of accounts as trustee, or guardian, is shown, and that the remedy must be either in the court of probate, or in equity. Any proceedings in a court of probate are out of the question here. If defendant was ever appointed guardian of this plaintiff, Sophia, it was in a foreign country, from which both the guardian and ward have removed permanently. Our probate court has no jurisdiction of the matter. There can be no doubt that the most appropriate proceeding would have been a bill in equity, praying for a discovery, and also for an account in all matters where defendant had received property in trust, in any way, for the plaintiff, Sophia, before marriage, whether as guardian, as bailiff, or as receiver, and for all services rendered, and praying for a decree for the payment to the plaintiffs, of all sums thus found due.

A suit in equity is the usual and most effectual remedy for a breach of trust, and in any case the jurisdiction and machinery of these courts is so much better adapted to meet the exigences of every case, by enforcing a restitution of the trust property, and compelling an account against the delinquent parties, that any other remedy is rarely resorted to. Hill on Trustees, 518. Still in all matters of account, the jurisdiction of equity is not exclusive, but is concurrent with that of courts of common law. 1 Story's Eq. Juris. sec. 442. The question here is not what would have been the best course for these plaintiffs to have pursued, but can this suit for money had and received, be maintained at all ? or must these proceedings be dismissed and the parties turned round to equity to obtain any redress ?

During the continuance of a guardianship, that is, while the relation of guardian and ward continues, no suit at law could be maintained by the ward against the guardian in relation to the trust property, but his remedy must ordinarily be in equity. The same is generally true between trustee and *cestui que trust*, while that relation continues. So that unless some legal debt has been created between the parties or some engagement, the non-performance of which may be the subject of damages at law, a court of equity is the only tribunal to which the *cestui que trust* can have recourse for redress. An action at law for money had and received, will not lie against a trustee while the trust is still open, but when a final account has been stated between the parties, and the trust is closed, such an action may be maintained. Hill on Trustees, 42 and 518. So, when the trust is executed so that it becomes cognizable at law and nothing more remains to be done by the trustee, the parties have their remedy at law. Bald. C. C. 422.

In *Case* v. *Roberts*, 1 Holt's N. P. C. 500, it is held, *Burrough, J.,*

that if money is paid into the hands of a trustee for a specific purpose, it cannot be recovered in an action for money had and received, until that specific purpose is shown to be at an end. But if the plaintiff show that the specific purpose has been satisfied, that it has absorbed a certain sum only, and left a balance, such balance (the trust being closed,) becomes a clear and liquidated sum for which an action will lie at law, though while the matter remains in account and is charged with the specific trust, the action for money had and received will not lie. This was a case where the plaintiff had deposited a certain sum in the hands of defendant in trust for certain specific purposes.

In the case before us it does not appear that the particular relations were between the guardian and ward, though we infer that defendant was a guardian only during the minority of the ward. Certain real estate and personal property descended to the plaintiff, Sophia, from her father or mother, or came to her from some other source, and she being a minor, was not in law competent to manage and dispose of the same, and the defendant was appointed her guardian, to act for her during her minority; and it appears that he, during the period of her minority, had converted all her real estate, slaves, &c., into money, which he held in trust for her, until she became of age, when his right to hold and control this property ceased, and she, by operation of law, became entitled to recover it from his hands.

No question is here made about the authority of the guardian to dispose of the real estate, or his manner of doing it. By suing for money had and received, the plaintiffs ratify all his acts and contracts, and claim only the money which he received for the same. The guardian was liable to an action of account at common law by the infant after he comes of age, and the infant while under age may by his next friend call the guardian to account, by a bill in chancery. 2 Kent's Com. 229.

So in Vermont, where the old action of account was in use, it was held in *Field & wife* v. *Torrey*, 7 Vt. 372, that the action of account after the termination of a guardianship, may be sustained in the courts of common law, unless the guardian had accounted in the probate court. This is going farther than we are required to go in the case before us. Here the relation of guardian and ward never existed under our laws. But upon the facts stated, defendant may be treated as the bailiff and receiver of the plaintiff, Sophia, and in those cases the action of account lay at common law by the ward, after arriving of age. *Field* v. *Torrey*, *supra*, and cases cited.

In Massachusetts, Connecticut and New York, the action of account was formerly used, but it has gradually gone out of use and has been abolished by law in some of them. It was never used in this State, but assumpsit upon an account stated or annexed to the writ, or upon the common money counts, has been used in its place always here, as it has been recently in the other States mentioned. In *Fanning* v. *Chadwick*, 3 Pick. 420, 424, *Wilde, J.*, in speaking of the action of account, says: "But this action is almost obsolete, even in England, and there seems to be no necessity for reviving it here. Justice may be administered in a form more simple and less expensive, by an action of

assumpsit, especially since the court is authorized to appoint auditors. Assumpsit now has all the advantages without the disadvantages peculiar to an action of account."

For particular description of the action of account and the proceedings therein, see 1 Selwyn's N. P. by Wheaton, 1; also, 1 Story's Eq. Juris. sec. 442. In the first of these authorities it is said, that by the common law an action of account for the rents and profits may be maintained by the heir after he has attained the age of fourteen years, against the guardian in *socage*. So at common law, account will lie against a bailiff or receiver, and in favor of trade and commerce by one merchant against another, and it is said in *Green* v. *Johnson*, 3 Gill and Johns. 390, that this action of account is the only action that can be brought against a guardian, as guardian, in a court of law, other than an action on his bond. The moment a ward is emancipated from the authority of his guardian by reaching the age prescribed by law, his cause of action is complete. The relation which subsisted between them ceased to be a subsisting trust; an action of account may be immediately instituted in a court of law, and from that time the act of limitation dates the commencement of its operation.

There are a great variety of trusts differing in their essential particulars from each other. Many trusts are created by parents for the benefit of children or friends, where the property is to be holden by the trustee, for the benefit, and during the life, of the *cestui que trust*. In such cases the *cestui que trust* could never have an action at law for money had and received, but could only enforce the execution of the trust in equity. In the case before us, assuming that the defendant was guardian of said Sophia, during her minority, then the property had first descended to her, and on his appointment, the law took it from her hands and placed it in his, in trust for her, for particular purposes, and for a fixed and definite time, at the expiration of which all his right of control over the property ceased, and it vested again in her by operation of law. Had there been real estate unsold at the time she became of age, she would at once have been entitled to the possession of it, and whatever money he had received for her, all belonged to her, after deducting the proper charges of the guardian.

In its leading features this trust is very nearly like the one in *Case* v. *Roberts, supra,* where it was held that an action for money had and received would lie to recover the balance of the money which the plaintiff had entrusted to the defendant for a particular purpose, after that particular object had been accomplished and the trust ended. In this case, as in many others, the action for money had and received is in the nature of a bill in equity. *McCrea* v. *Purmort,* 16 Wend. 460; *Stratton* v. *Rastell,* 1 T. R. 370; *Lockwood* v. *Kelsea,* 41 N. H. 185.

When the declaration in this case is amended so as to correspond with the specification and proof, which amendment may be allowed on terms, the plaintiffs may maintain their action for money had and received, to recover whatever money remains in defendant's hands, which, upon a fair settlement, belongs to plaintiffs. The defendant may also amend by pleading the statute of limitations if he desires.

The auditor was correct in hearing the case upon the papers as they came to him.    He has no power to allow amendments, or receive new pleas.    Still it is common for motions to be made before him for leave to file new pleas, or to amend, so that he may in his report state such facts, or make allowances provisionally, so that if the amendments should be allowed, or the pleas be received, by the court subsequently, his report might meet this new condition of the pleadings.

The auditor's report is *prima facie* evidence of all that it is necessary to prove to authorize the allowance of all such items by the jury as were allowed by him.    If a demand was necessary before the plaintiffs could legally recover, it is to be presumed that a demand was proved, otherwise the auditor would not have allowed any items to the plaintiffs. It does not appear from the report that any question was raised before him upon that point, but we think it must be held that the auditor's report was sufficient *prima facie* evidence to warrant the jury in allowing to plaintiffs all the items which he had allowed.

The claim for services rendered cannot be recovered under this declaration, unless there was some adjusting of the amount due, or some agreement or understanding as to the allowance, so that the amount due for such services could be properly considered as liquidated and settled, and as so much money in the defendant's hands.    Nor can it be offset to the charge for the plaintiff's board, unless there was some agreement or understanding, either express or implied, between the parties that there should be such application.  If such agreement or understanding be found by the jury, the off-set may be made by finding the defendant's charge for board of plaintiff, paid to that amount.

Upon the first ground the nonsuit was properly ordered, but the *plaintiff may amend*.