CHAMBERLIN v. PERKINS.          { MARCH 13, 1875.

*Amendments—Rescission of Contracts.*

| 55 | 237 |
| 67 | 384 |

Under a count for money had and received, a draft accepted by the defendant is admissible in evidence.

It is ordinarily within the discretion of the presiding judge at the trial to allow a new specification to be filed or amended.

Under a count for goods, wares, and merchandise sold and delivered, a draft accepted by the defendant, the consideration of which was flour and grain sold and delivered to him by the plaintiffs, is not admissible in evidence.

Where A sold and delivered to B a lot of flour and grain, and received B's acceptances in full payment and discharge of the price therefor, which B afterwards refused to pay—*Held*, that A, having been compelled to take up the drafts, might elect to consider his agreement to receive the acceptances in payment of the original debt as rescinded, and might recover the price of the flour and grain in a suit therefor, the drafts being in court to be disposed of as the defendant's safety might require.

ASSUMPSIT. March 19, 1870, Philo Chamberlin, James M. Chamberlin, and Oren C. Lee, described as partners under the firm of J. M. Chamberlain & Co., sued out a writ against the defendant, returnable to the April term, 1870, of the supreme court for this county. The declaration contained the common counts for goods, wares, and merchandise sold and delivered, money had and received, &c., and an account annexed for flour and corn sold, and interest due, amounting to $1,210.09. The defendant claimed that he had paid for the corn and flour by drafts drawn by the plaintiffs on him, and accepted by him, and which he claimed the plaintiffs still had, and had never offered to return to him, and which had been expressly taken and received by them in payment and satisfaction of the flour and corn sold to him. The plaintiffs thereupon claimed a continuance on the ground of surprise, denying that any such drafts had been given. The court gave the plaintiffs twenty days to file affidavits as to the non-existence of the drafts. Within that time they filed an affidavit that the drafts had been burned. The case was thereupon continued by the court, and upon the plaintiffs' motion they had leave to add a new specification upon the drafts. They filed a new specification July 1, 1872, of drafts purporting to have been *drawn* by the defendant. The action was tried at the April term, 1873, when the plaintiffs on leave amended their specification by setting forth drafts *accepted* by the defendant; to which he excepted, and filed a plea of the statute of limitations, general issue, and accord and satisfaction. No replication was filed. The jury returned a general verdict for the defendant.

The action was reviewed by the plaintiffs, and tried again at the

April term, 1874, the defendant renewing his objections to the amendments, and insisting on the statute of limitations under his plea, to which no replication had been filed, but in fact agreeing to consider such replication as filed.

March 19, 1872, Philo Chamberlin and James M. Chamberlin, as surviving partners of said firm (Lee having deceased after the first suit was commenced), sued out a second writ against the defendant, returnable at the April term, 1872, of the supreme court for this county. The declaration, which contained one count only, alleged that the defendant was indebted to the plaintiffs and said Lee in his lifetime in the sum of $1,500, "for corn, flour, and divers goods, wares, and merchandise sold and delivered to the defendant," and for "interest upon certain sums due and owing from the defendant" in the lifetime of Lee, in consideration whereof he promised, etc. On the 3d day of April, 1873, the plaintiffs filed a specification of their claim in this suit, specifying corn and flour sold and delivered, and interest on the sum due for the same; also two other drafts drawn by them on Perkins, accepted by him, which he had failed to pay, and which they had been compelled to take up.

At the April term, 1874, on motion of the defendant, both actions were tried together, the defence and pleadings being the same in both. When the specification was filed, and at the trial, the defendant excepted to the order allowing it to be filed, and insisted that a count upon the drafts could not be joined to the count and specifications in either writ. The plaintiffs did not contend, but at the trial admitted that the drafts were taken in payment and satisfaction of the flour and corn sold, and at the April term, 1874, the only question in controversy was under the plea of accord and satisfaction, and the statute of limitations as applicable to the drafts accepted by him, the plaintiffs abandoning all claims except upon the drafts. Under the plea of accord and satisfaction, the defendant contended that he had placed the sum of $751.14 in a bank in Dover for the plaintiffs, which Lee, the deceased plaintiff, had agreed to receive in full satisfaction of the four drafts.

The jury found specially that there was no accord and satisfaction, and returned a verdict for the plaintiffs in the sum of $3,280.20, being the amount of the four drafts and interest.

The questions whether the plaintiffs should have been allowed to add a count or specification covering said drafts, and whether or not the statute of limitations is a defence thereto, are reserved. The writs, pleadings, and records in both suits may be referred to as part of this case, together with the drafts.

*Rolfe* and *Mugridge*, for the plaintiffs.

*F. Hobbs* and *J. G. Hall*, for the defendant.

*Smith, J. Under the count for money had and received in the first

* Ladd, J., and Foster, C. J., C. C., having presided at the trials at *nisi prius*, did not sit.

suit, the drafts set forth in the amended specification were clearly admissible in evidence, the signatures being first proved. The question of filing or amending a specification is ordinarily one of discretion, to be exercised by the judge who tries the cause. The office of a specification is to apprise the defendant of the nature of the plaintiff's claim where the counts in the declaration are general. The defendant called for no specification, and the plaintiffs might therefore have offered the drafts in evidence without filing one.* The furnishing of a specification was therefore a gratuity on their part. It could not possibly operate to prejudice the defendant. On the contrary, it notified him of the exact nature of the plaintiffs' claim. No objection could lie to their filing it, or amending it after it was filed.

In the second suit, the declaration was for " corn, flour, and divers goods, wares, and merchandise sold and delivered, and for interest upon money due and owing from the defendant to the plaintiffs." Such a declaration would not be supported by a note or draft offered in evidence. A specification becomes part of the declaration when it states a cause of action consistent with the declaration. The specification cannot enlarge or modify, alter or amend, the declaration. *Pickering* v. *DeRochemont*, 45 N. H. 77. As the drafts could not be given in evidence under the declaration, it follows that the specification could not be amended so as to include the drafts.

The question then arose " whether the plaintiffs should have been allowed to add a count, or specification, covering said drafts." The case assumed that the original debt had been paid, and no longer existed. The amendment offered was not for the pupose of avoiding a variance, or supplying an allegation accidentally omitted; but the plaintiffs asked to insert a new declaration, descriptive of a different cause of action. It hardly admits of a question, even under the very liberal provisions of our statute permitting amendments, and of our numerous decisions upon the subject, that the plaintiffs could not be permitted to do this. It is unnecessary, however, to consider this question, because, the defendant having failed to perform his promise, which was the consideration of the plaintiffs' agreement to discharge the original debt, they are thereby placed in a situation by the defendant where they can treat the contract as having been rescinded, and consequently can fall back upon the original debt, and recover for the same under the count for corn, flour, &c., sold and delivered; and the amount they would be entitled to recover would be the same as the amount due upon the two drafts. As exact justice has been done the parties by the verdict which was returned, there is no occasion to disturb the same.

This view of the case makes it unnecessay to consider the question raised by the plea of the statute of limitations. The case of *Rollins* v. *Horn*, 44 N. H. 591, however, seems to be an authority against the position taken by the defendant.

The result of these conclusions is, that in the first suit the plaintiffs

*Bean* v. *Brown*, 54 N. H. 396, 397.

REPORTER.

are entitled to judgment for the amount of the two drafts set forth in their amended specification. In the second suit they are entitled to judgment for the sum due for corn and flour sold and delivered, as set forth in the declaration, upon bringing said two last mentioned drafts, if still in existence, into court, and surrendering them to the defendant. The amount for which judgment is to be rendered in the second suit is the same as the amount due on the two drafts.

CUSHING, C. J.    The principal question to be settled arose in the second of the two actions.    In this case the declaration was for " corn, flour, and divers goods, wares, and merchandise sold and delivered to the defendant," and for " interest on certain sums due and owing from the defendant."    At the trial, the defendant alleged that certain drafts had been given by the defendant and received by the plaintiffs in satisfaction of this demand, so that this demand was paid; and this was not denied by the plaintiffs.    Thereupon the plaintiffs were permitted to amend by adding a count founded upon the drafts, and on trial verdict was recovered for their amount; and the question presented by the case is, whether that amendment was admissible.

I confess that I am unable to see on what principle this could be done.  The defendant alleged that the debt declared for had been paid, and the plaintiffs did not deny that such was once the understanding.  The difficulty was not that the cause of action had not been correctly described, that some change was necessary to adapt the declaration to the evidence, or that any allegation of matter essential to the maintenance of the action had been omitted.  The defence was, that there was no cause of action.  Would it aid this difficulty at all to describe this cause of action differently?  Whatever form you give to it, in whatever terms you describe it, always you are met by the same difficulty, that the cause of action does not exist,—that the debt has been paid.  What the plaintiffs proposed to introduce was a count in some form or other in which they should declare for indebtedness accruing to them from the fact of their having been obliged to pay money to take up the draft which the defendant averred had been received by them on the express argeement that it should be a payment of the cause of action originally declared upon.  It could not, therefore, be the same cause of action, because that no longer existed.  I think no case will be found in which the doctrine of amendments has been made available to revive a defunct cause of action by describing it anew.

The case of *Burnham* v. *Spooner*, 10 N. H. 165, was one in which there was no pretence that the note in question had been accepted in satisfaction of the debt; and I think the same will be found true in the other cases, where, owing to some difficulty about the validity of the note, the party has been permitted to amend his declaration by declaring on the original cause of action, which was the consideration of the note.

The whole doctrine in regard to the matter of payment of the existing debts by the acceptance of promissory notes or bills of exchange

expressly agreed to be accepted in payment and satisfaction, appears to me to be in no very satisfactory condition; and if it were necessary for the settlement of this case, a somewhat lengthened discussion of it might be interesting.

The defence set up by the defendant was, that he gave his promise in writing to pay the amount of this debt to such person as the plaintiffs should order it to be paid to, and that this promise was accepted in full satisfaction and discharge of the debt declared on. "It is true," he says, "the plaintiffs, relying upon this promise, ordered this money to be paid to a third person; but when my written promise was presented to me, I refused to perform it, and the plaintiffs have been obliged to pay back what they received for it, and have my acceptance here to surrender. The original debt is paid by this broken promise, and the promise I do not propose to fulfil if I can avoid it."

It appears to me that this difficulty admits of being solved, and should be solved, by the common and elementary principles of the rescission of contracts. This transaction is entirely between the original parties. The defendant, having broken the promise in consideration of which, he says, the plaintiffs agreed to discharge the original debt, the plaintiffs elect to consider the contract as rescinded, and, so electing, bring their action to recover the original debt. No third party is injured by the transaction, and the parties themselves are restored exactly to their original position. *Fuller* v. *Little*, 7 N. H. 535; *Drew* v. *Claggett*, 39 N. H. 431; *Luey* v. *Bundy*, 9 N. H. 298; *Danforth* v. *Dewey*, 3 N. H. 79. Every condition necessary to the rescission of a contract appears to have been fulfilled, and I can see no reason why the plaintiffs should not have been permitted to recover on their original count, of course bringing their drafts into court to be disposed of as the defendant's safety required.* As this result has been practically reached by the proceedings had, I think the verdict ought not to be disturbed. This view renders the question as to the statute of limitations, and also the question as to the amendment, of no importance.

RAND, J., C. C. I am inclined to think that the main difficulty in this case may be removed by a resort to the doctrine of the rescission of contracts; although, if courts were disposed to insist upon the utmost precision of logic, it might not be easy to see how an *extinguished* contract could be *revived* by the rescission of another contract. But it may be considered as settled in this state, that, where goods have been sold and delivered upon an executory contract, and the party receiving the goods fails to comply with its requisitions, the injured party may consider it as rescinded, and bring his action of *indebitatus assumpsit* to recover the value of the goods sold. And when a party refuses to perform a contract which is void by the statute of frauds, the other party may recover back whatever property he has delivered in part execution of the contract. And where a party who

---

* BELL, C. J., in *Wheeler* v. *Whipple*, Mer. Co., unreported.    REPORTER.

is indebted to another delivers goods and money in part payment, and the creditor afterwards refuses to account for them upon the debt, and requires and receives payment in full, the debtor may maintain assumpsit for the goods and money so delivered in part payment.

And when A purchased of B two ploughs, and in an adjustment of account between them the value of the ploughs was allowed to B, who afterwards refused to deliver them, and converted them to his own use, it was held that A might recover the price of the ploughs in an action for money had and received. And I think the case of *Sloman v. Cox,* 1 Cromp. Mees. & Roscoe 471, is a case in point. That was assumpsit upon two bills of exchange. The first bill, dated the 16th of March, 1833, and payable three months after date, for the sum of £18, was drawn by the defendant upon and accepted by a person named Jones, and endorsed to the plaintiff. The second bill, dated the 20th of June, and payable two months after date, was also drawn by the defendant upon and accepted by Jones, and endorsed to the plaintiff. At the trial before Lord LYNDHURST, C. B., it appeared that the first bill having been dishonored, the plaintiff agreed to take £8 in cash, and another bill for £10 ; and accordingly the second bill was drawn, and endorsed to the plaintiff, *and the bill for £18 was given up to the acceptor.* After the acceptance of the second bill, and before it became due, Jones, the acceptor, without the concurrence of the defendant, but while the bill was in his hands, altered the date of the bill from the 20th of June to the 24th. The bill for £18 was subsequently obtained by the plaintiff from the acceptor. PARKE, B., said,—" The defendant is liable to the plaintiff, as the drawer of a bill, for £18. Being sued upon that bill, he shows, in order to prove payment, that in consequence of an agreement with the plaintiff he gave him £8 in cash and a bill for the remainder. That bill turns out to be, in fact, of no value, having been vitiated by an alteration. The defendant, therefore, not being liable on the second bill, still remains liable upon the first." In the present case equity is very manifestly in favor of the verdict, and I can see no legal objection to it. The exceptions must be overruled, and there must be

*Judgment on the verdict.*